FILED

10/27/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0178

DA 18-0178

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 271

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

JOHN WILSON CHAMBERS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC-2012-31
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Lisa S. Korchinski, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

          Kent M. Sipe, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  August 26, 2020

Decided:  October 27, 2020

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 John Wilson Chambers (Chambers) appeals from a denial of his Motion to Dismiss for a speedy trial violation by the Tenth Judicial District Court, Fergus County. The singular issue raised by Chambers is whether he was denied his constitutional right to a speedy trial.

¶2 We dismiss the charges against Chambers.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On June 13, 2012, the State filed an Information charging Chambers with burglary and theft of more than $800.00 from electronic gambling machines at the Little Montana Truck Stop in Grass Range, Fergus County. Chambers, while detained in another county, was served with an arrest warrant for the Fergus County charges on June 15, 2012.

¶4 Chambers had been arrested and detained since May 11, 2012, for nine burglaries related to multiple break-ins in Stillwater County, when the Fergus County warrant was served on him. For these Stillwater County crimes, Chambers was sentenced to eight concurrent 20-year prison sentences in February 2013. Chambers was transferred to the Montana State Prison (MSP) to serve his Stillwater County sentence. When Fergus County learned Chambers had been sent to prison for the Stillwater County crimes, it placed a detainer on Chambers. MSP confirmed the detainer was in place on June 6, 2013.

¶5 On June 30, 2017—nearly five years after his arrest for the Fergus County charges—Chambers had still not been brought to trial. He filed a pro se Motion to Dismiss the Fergus County charges arguing that the five-year delay violated his right to a speedy

2

trial. Relevant to this appeal, Chambers had been incarcerated since being charged and served with the Fergus County arrest warrant on June 15, 2012. The District Court held an evidentiary hearing in August 2017 and denied Chambers' pro se motion. The District Court later appointed Chambers an attorney, who filed an additional motion to dismiss for lack of speedy trial, which was again denied. Chambers pleaded guilty and reserved the right to appeal the denial of his speedy trial motion. The District Court imposed a five-year sentence for burglary to the Department of Corrections, all suspended, and six months in the county jail for misdemeanor theft, all suspended. The sentences were run consecutive with Chambers' sentences from Stillwater County, which, at the time, Chambers was still serving.

## STANDARD OF REVIEW

¶6 A speedy trial violation presents a question of constitutional law, which this Court reviews *de novo* to determine whether the court correctly interpreted and applied the law. *State v. Stewart*, 2017 MT 32, ¶ 6, 386 Mont. 315, 389 P.3d 1009; *State v. Butterfly*, 2016 MT 195, ¶ 6, 384 Mont. 287, 377 P.3d 1191. Factual findings underlying a speedy trial analysis are reviewed for clear error. *State v. Morsette*, 2013 MT 270, ¶ 12, 372 Mont. 38, 309 P.3d 978 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815). A finding is clearly erroneous if it is not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if review of the record convinces [this Court] that the district court committed a mistake. *Ariegwe*, ¶ 119.

3

**DISCUSSION**

¶7 A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, § 24 of the Montana Constitution. *Ariegwe,* ¶ 20; *see generally* U.S. Const. amend. VI, XIV; *see generally* Mont. Const. Art. II, § 24. If the delay between accusation and trial exceeds 200 days, we evaluate a speedy trial claim by balancing four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused. *Ariegwe,* ¶¶ 106-111. No one factor is dispositive by itself; the factors must be balanced and the unique facts and circumstances of each case must be considered to determine whether the accused has been denied the right to a speedy trial. *Ariegwe,* ¶¶ 105, 112.

**Factor One: Length of Delay**

¶8 The right to a speedy trial begins when a person has been formally accused or charged by the prosecution, whether by arrest, the filing of a complaint, or by indictment or information. *Ariegwe,* ¶ 42. It is well-established that once the 200-day threshold is triggered, a presumption of prejudice arises and a speedy trial analysis is mandated. *Ariegwe,* ¶¶ 37, 41. The "further the delay stretches beyond the trigger date, the stronger the presumption . . . that the accused has been prejudiced by the delay." *Ariegwe,* ¶ 107.

¶9 Here, the total length of delay was 2,066 days: Chambers was accused on June 13, 2012, when the State filed the Information and trial was scheduled for February 7, 2018. The five-year length of delay well exceeds the 200-day threshold. Accordingly, this factor

4

weighs heavily against the State and creates a strong presumption of prejudice to Chambers.

**Factor Two: Reasons for Delay**

¶10 To evaluate this factor, the Court must identify each period of delay, attribute each period of delay to the appropriate party, and assign weight based on the specific cause and culpability for the delay. *Ariegwe*, ¶ 124. The duty to bring the defendant to trial is upon the State and a defendant is under no obligation to ensure diligent prosecution of the case against him or to help the State avoid dismissal for failure to timely prosecute him. *Ariegwe*, ¶ 64; *State v. Blair*, 2004 MT 356, ¶ 23, 324 Mont. 444, 103 P.3d 538. Further, assignment of weight to each period of delay is based on the specific cause and motive for the delay. *Ariegwe*, ¶ 108. Delay due to negligence by government actors will be weighed more heavily against the State than valid reasons for delay and institutional circumstances. *State v. Hodge*, 2014 MT 308, ¶ 19, 377 Mont. 123, 339 P.3d 8; *Ariegwe*, ¶ 108. The more delay caused by the State for "unacceptable" reasons, such as from negligence or bad faith, the more likely that the defendant's speedy trial right has been violated. *Ariegwe*, ¶ 109.

¶11 The District Court held the delay was attributable to the State's lack of diligence and that the State did not adequately justify the delay. The State agreed with the District Court's conclusion that, throughout the delay, the State could easily have determined Chambers' location because he was incarcerated by the State. Additionally, there were legal means to bring the defendant to trial even though he was incarcerated, and

5

the State took no actions to do so. Factor two therefore weighs against the State and in favor of Chambers.

**Factor Three: Accused's Responses to Delay**

¶12 Factor three requires the Court to evaluate the accused's responses to the delay based on the surrounding circumstances, including: timeliness, persistence, and sincerity of the objections; the reasons for the acquiescence; whether the accused was represented by counsel; and the accused's pretrial conduct. *Ariegwe*, ¶ 110. The totality of the accused's responses should be considered together with the other three factors of the balancing test in a speedy trial right analysis. *Ariegwe*, ¶ 79. However, "[s]o long as the defendant asserts his right to a speedy trial by a motion to dismiss on speedy trial grounds filed prior to the time of trial, we conclude that the defendant has satisfied the third-prong of the *Barker* test and that further analysis of that prong is not only unnecessary, but inappropriate." *Ariegwe*, ¶ 137; *see generally Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182.

¶13 Chambers asserted his speedy trial right when he filed a pro se motion to dismiss in June 2017, which was refiled in December 2017 after counsel was appointed. The District Court held that because Chambers spent years in prison and knew about the allegations against him, he did not demonstrate a sincere desire to defend against the charges and proceed to trial. Additionally, the District Court held the filing of his pro forma motion to dismiss constituted only "marginal evidence of a desire to be brought to trial." *Ariegwe*, ¶ 80. However, the District Court's conclusion is incorrect. Pursuant to *Ariegwe*,

6

Chambers met this prong of the test when he filed his motion to dismiss for speedy trial violations prior to the time of trial. *Ariegwe*, ¶ 137. Indeed, it was Chambers' motion that reignited the prosecution against him. We conclude this factor weighs heavily against the State.

**Factor Four: Prejudice to the Accused**

¶14    Prejudice is assessed "in the light of the interests which the speedy trial right was designed to protect." *Ariegwe*, ¶ 86 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193). The "further the delay stretches beyond the trigger date, the stronger the presumption. . . that the accused has been prejudiced by the delay." *Ariegwe*, ¶ 107. Both Chambers and the State recognize the effect that presumptive prejudice can have on a speedy trial analysis. "Although [presumptive prejudice] must be considered together with the other three factors and 'cannot alone carry' a speedy trial claim, presumptive prejudice 'is part of the mix of relevant facts, and its importance increases with the length of delay.'" *Hodge*, ¶ 24. We have said that to evaluate prejudice we must consider the following: (1) the nature of the incarceration; (2) the amount of disruption the incarceration has caused to the accused's life; and (3) the accused's ability to present an effective defense. *Ariegwe*, ¶ 113.

¶15    The State argues that Chambers' incarceration cannot be considered oppressive because he was already incarcerated on unrelated charges. *See State v. Hubbard*, 2015-Ohio-646, ¶ 23 (Ct. Ap.) (holding that the type of prejudice identified in *Barker* was not implicated in Hubbard's case as he was already incarcerated on unrelated charges).

7

Nevertheless, this Court has held that prior incarcerations do not necessarily preclude a defendant from demonstrating prejudice. *State v. Highpine*, 2000 MT 368, ¶ 26, 303 Mont. 422, 15 P.3d 938. To be exact, this Court held:

> Our prior opinions *have not concluded* that a defendant who is incarcerated on one charge and is later charged with a second offense, *cannot be prejudiced by oppressive pretrial incarceration for the first charge . . .* that the second charge is generally not susceptible to claims of prejudice due to pretrial incarceration, as the defendant would have been incarcerated as a result of the first charge regardless of the second charge. Highpine was incarcerated for over one year prior to trial and although nothing indicates that the incarceration was intended to oppress, the fact of the 428 days of pretrial incarceration suffices to establish this element in this case.

*Highpine*, ¶¶ 26-27 (emphasis added).

¶16    Chambers asserts that the 2,066-day delay is directly attributable to the State's lack of diligence in bringing him to trial and that Chambers did not abscond from the proceedings. We recognize that Chambers was serving a Stillwater County sentence during his pretrial delay of five years on the Fergus County charges. Here, the pretrial incarceration of five years is much longer than in *Highpine* and, as in *Highpine*, this delay suffices to establish prejudice. Moreover, we recognize that Chambers was eligible for parole in February 2018 on his Stillwater County charges and that the charges in Fergus County affected his parole eligibility. Chambers was also not able to pursue a sentence that would run concurrently with his Stillwater County sentence. While we realize the District Court ultimately imposed a suspended consecutive sentence, Chambers lost the opportunity of having a sentence of prison time to run concurrently with his

8

Stillwater County sentence. We cannot predict what sentence the District Court would have imposed had Chambers been timely brought to trial and sentenced years earlier.

¶17 A pretrial delay of nearly five years without *any* reason advanced by the State for the delay is presumptively prejudicial and should weigh heavily against the State; not only for purposes of this analysis, but to deter the practice of delaying prosecution and effectively extending a sentence by filing a detainer when a defendant is serving multiple incarcerations.

**Balancing the Factors**

¶18 When we balance the four factors, which we have determined weigh entirely against the State, we conclude that Chambers was denied his constitutional right to a speedy trial: the lengthy five-year pretrial delay was excessive and unnecessary; the State made no effort, other than lodging a detainer, to bring Chambers to trial in a timely manner; Chambers filed a motion to dismiss for speedy trial violations prior to trial; and Chambers was presumptively prejudiced by the delay.

## CONCLUSION

¶19 The only remedy available for a speedy trial violation is dismissal of the charges. *State v. Betterman*, 2015 MT 182, ¶ 24, 378 Mont. 182, 342 P.3d 971. Accordingly, the charges against Chambers are dismissed.

/S/ LAURIE McKINNON

9

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE